Calla-han, J.
This appeal involves the salary rights of an employee of the City of New York, who was retired for ordinary disability and subsequently restored to duty in a position similar to that which he held upon retirement.
Petitioner was appointed to the ungraded position of auto engineman in the Department of Water Supply, Gas and Electricity on November 22, 1921. He was retired for ordinary physical disability on February 2, 1935, when he was receiving a salary of $1,980 per annum. He was reinstated to his former position on February 11, 1937, at a salary of $1,500 per annum, but his salary was restored to $1,980 shortly thereafter.
On December 2, 1940, petitioner was again retired for ordinary disability. His petition alleges that at that time he was receiving a salary of $2,280 a year, but was entitled to receive $2,340 a year. The defendants, in their answer, say that his salary on retirement was $2,200 a year. In any event, it appears that petitioner’s retirement allowance was based on a five-year average salary of $2,074.52 per annum.
On April 28, 1942, petitioner was restored to duty as auto engineman in the Department of Hospitals of the City of New York, at an annual salary of $1,500. Since then he has become entitled to receive several annual increments of $120 each, pursuant to the provisions of section B40-6.0 of the Administrative Code of the City of New York. He has also been receiving from the New York City Employees’ Retirement System the difference between $1,500 (plus increments) and $2,074.52, the amount of his final average salary. He claims that he has been entitled to receive, during this period, $2,340 a year, his salary at time of *488 retirement plus increments, and brings this proceeding in the nature of mandamus to compel payment to him of said salary and accumulated arrears based thereon.
Petitioner bases his claim upon the provision of section 31-b of the Civil Service Law, which states: “ § 31-b. * * * An
employee reinstated from a preferred list to same or to a similar position shall receive at least the same salary such employee was receiving at time of separation from the service.”
The petitioner alleges in his petition that he was reinstated from a preferred list to the same or a similar position as that which he held at the time of his separation from the service. While the defendants’ answer denies these allegations of the petition, the affidavit submitted by defendants shows that the title of both positions is the same, and makes no point that the work is not the same, nor does it state that the reinstatement was not from a civil service preferred list. Defendants’ position is that, as a matter of law, petitioner is not entitled to the benefits provided in section 31-b, but his rights are controlled by section B3-41.0 of the Administrative Code of the City of New York. The latter section reads as follows: '
“ § B3-41.0. Safeguards on disability retirement.— a. Once each year the board of estimate may, and upon his application shall, require any disability pensioner, under the minimum age for service retirement for the group from which he was retired to undergo medical examination. Such examination shall be made at the place of residence of such beneficiary or other place mutually agreed upon. Upon the completion of such examination the medical board shall report and certify to the board flif estimate whether such beneficiary is or is not totally or partially incapacitated physically or mentally and whether he is or is not engaged in or able to engage in a gainful occupation. If the board of estimate concur in a report by the medical board that such beneficiary is able to engage in a gainful occupation, it shall certify the name of such beneficiary to the appropriate civil service commission, state or municipal, and such commission shall place his name as a preferred eligible on such appropriate lists of candidates as are prepared for appointment to positions for which he is stated to be qualified, of a salary grade not exceeding that from which he was last retired. Should such beneficiary be engaged in a gainful .occupation, or should he be offered city-service as a result of the placing of his name on a civil service list, such board shall reduce the amount of his disability pension to an amount which, when added to that then &arned by him, or earnable by him in city-service so offered him, *489 shall not exceed the amount of the final compensation on the basis of which his pension was determined. Should the earning capacity of such beneficiary be further altered, such board may further alter his pension to an amount which shall not exceed the rate of pension upon which he was originally retired but which, subject to such limitation, shall equal, when added to that earnable by him, the amount of his final compensation on the basis of which his pension was determined. The provisions of this section shall be executed, any provision of the charter or the code to the contrary notwithstanding.”
Special Term has upheld the defendants’ contentions as to the law, and has dismissed the petition upon the ground that section 31-b of the Civil Service Law has no application to petitioner, because it relates only to employees separated from service under circumstances described in section 31 of the Civil Service Law, i.e., by reason of abolition of positions through consolidation of departments, etc. We think this is too narrow a construction to give to section 31-b. It is to be noted that the language used in the section is broad enough to apply to any employee reinstated from a preferred list to the same or a similar position. It appears to cover employees in the four classes in the civil service, or at least any of them in which preferred lists might exist. (See Civil Service Law, § 12.) Section 31, on the other hand, is expressly limited by its terms to employees in the competitive class. Section 31-b contains no express reference to section 31 nor does it refer in any way to the circumstances under which the employee was separated from service. It may be noted that, on the other hand, sections 31-a and 31-0 of the Civil Service Law are by their terms limited to preferred lists “ provided ” or “ defined in section thirty-one * * Sections 31 and 31-b were enacted at different times, section 31 being adopted in 1919 (L. 1919, ch. 251), whereas section 31-b did not become a law until 1936 (L. 1936, ch. 525).
It would seem unreasonable, in view of the object of section 31-b and the broad language used therein, to ascribe to the Legislature an intention to limit the section to cases arising under section 31, merely because of the position and numbering of the sections. The purpose of the Legislature in adopting section 31-b apparently was to assure an employee who was separated from the civil service without fault, that upon reinstatement to the same or similar position from a preferred list, he would receive at least his former pay. There would appear to be no sufficient reason for the assumption that the Legislature intended to discriminate in this regard between those separated from *490 service by reason of abolition of their positions and those separated because of ordinary disability. Both events are equally fortuitous.
Section B3-41.0 of the Administrative Code would not appear to contemplate cases where the employee has fully recovered from his disability, is restored to his original or a similar position, and is performing the same work that he performed before retirement. The section might cover a case where an employee has been restored to his original title but is prevented by budgetary limitation from receiving his former pay. There is nothing in the present record to show that there is any budgetary limitation affecting petitioner’s rights.
Section B3-41.0, entitled “ Safeguards on disability retirement ’ ’, is clearly for the protection of the retirement system in' cases where a pensioner 'retired for ordinary disability has a limited earning capacity. It does not undertake to specify the salary at which an employee shall be reinstated, but serves the purpose of crediting the retirement system with the employee’s earning capacity, whatever it may be. It provides not for the payment of salary, but for the reduction of pension payments. We are concerned in this case, however, not with the amount of petitioner’s pension, but with the amount of his salary. Indeed, if he is entitled to the salary he claims, he would not be paid any pension. We must look to the applicable salary statute, therefore, to determine petitioner’s salary rights. The only statute we find that would apply to the salary rights of an employee reinstated to the same or a similar position after ordinary disability retirement, is section 31-b. Section B40-6.1 of the Administrative Code relates only to employees of the city restored from a preferred list established pursuant to section 31 of the Civil Service Law. ■ Section B40-6.1 was formerly Local Law 26 of the City of New York, 1937, effective June 28,1937. It thus was first adopted subsequent to section 31-b of the Civil Service Law. It could not have the effect of limiting the scope of section 31-b.
Full force may be given both sections 31-b of the Civil Service Law and section B3-41.0 of the Administrative Code if the latter is confined to cases where an employee who has been retired for disability may not be able to do his former work, or is unable to find a vacancy in his former position. When he is reinstated from a preferred list to his former or a similar position, he should receive the protection afforded by section 31-b.
If the statutes are so construed, employees restored to their original status would be restored to membership in the New *491 York City Employees’ Retirement System, and would, if within the specified grades, receive the benefit of the annual increments provided for by section B40-6.0 of the Administrative Code of the City of New York. The effect of a contrary construction would be to deprive petitioner and those similarly situated of membership in the retirement system, as well as the benefits they should receive from the annual increments provided in section B40-6.0. Petitioner would not be eligible for reinstatement in the retirement system until his salary reached $2,074.52. (Administrative Code, § B3-48.0.) He has been receiving nothing more than a bookkeeping credit for his increments since reinstatement. The City Retirement System has been getting the benefit of the increments.
Neither of the two decisions in Matter of Tormey v. La Guardia (278 N. Y. 450; 284 N. Y. 607) is controlling here. In the first Tormey case (supra) it was held that the petitioners therein, whose positions had been abolished for reasons of economy and who had been reinstated in the city service pursuant to the Administrative Code of the City of New York (§ B40-6.1), were entitled to receive the same .salary they had been receiving at the time their names were placed on the preferred list, although their status had been changed from full time to per diem employment in the meantime. Apparently, after the first decision had been rendered in their favor, Tormey and his copetitioners received their former salaries from sometime in 1934 up to, and including, December 31, 1937. Thereupon their salaries were again reduced by the action of the Board of Estimate of the City of New York, which made lower appropriations for the positions involved in the budget adopted for the year 1938 and the first half of 1939. Tormey and others thereupon brought a second proceeding again seeking to compel the payment of their former pay. The second proceeding was determined against the petitioners, the courts holding that section B40-6.1 was ineffective to overrule the provisions of the New York Charter (§67) which vests power in the Board of Estimate to fix salaries of employees “ except as otherwise provided * * * by statute.”
As was pointed out by Special Term in the second Tormey case (172 Mise. 1091), the Administrative Code defined ‘ ‘ Statute ’ ’ when used therein or in the charter, to mean ‘£ Any enactment of the Legislature of the State of New York.” (See Administrative Code, § 981-1.0, subd. Í3.) In the second Tormey case, based on this definition, it was held that as petitioners’ *492 rights to receive their former salaries arose under a local law, such rights were subordinate to the power of the Board of Estimate to lower salaries.
The present petitioner is not seeking rights granted to him by any local law, but by a State statute. .
There is nothing upon the present record to show that petitioner’s rights have been affected by any deficiency of appropriation in any budget adopted by the city since his reinstatement, so we do not have presented upon the record any question of conflict between section 67 of the Charter and section 31-b of the Civil Service Law.
The order should be reversed, with $20 costs and disbursements to the appellant. A trial of the issues of fact raised by the pleadings should be had and a final order entered based on the facts found, in accordance with this opinion. In computing the amount of accumulated arrears, the payments received by petitioner from the pension fund may receive due consideration.
Maetin, P. J., Glennon and Peck, JJ., concur; Townley, J., dissents and votes to affirm.
Order reversed, with $20 costs and disbursements to the appellant. A trial of the issues of fact raised by the pleadings should be had and a final order entered based on the facts found, in accordance with- opinion. Settle order on notice.